UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00019-JHM

GARRY RONALD SWAN                                                   PETITIONER

VS.

TIM LANE, WARDEN                                                  RESPONDENT

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

Petitioner Garry Ronald Swan, through counsel, brought this action pursuant to 28 U.S.C. § 2254 (DN 1). The Warden, Tim Lane, responded (DN 7), and Swan's time to file a reply has expired. The District Judge referred this case to the undersigned for rulings on any non-dispositive motions, conducting of hearings if necessary, and a report and recommendation of disposition (DN 3). For the reasons that follow, it is recommended that the petition be denied.

### Background

The Kentucky Supreme Court summarized the initial crime and trial of this matter as follows:

> In September 2009, Appellant was driving his SUV from his home in Manatee County, Florida to Washington, Indiana. He was accompanied by his wife Cynthia Swan and his friends Mickey McGuire and Andrew LeRose. The purpose of the trip was apparently to gain custody of Cynthia's son, who resided in Indiana. At some point during the trip, a decision was made to rob a bank. The group stopped for the night at a Super 8 Motel in Henderson, Kentucky.
>
> That night, the group made plans for a bank robbery. LeRose testified that McGuire and Appellant picked out a Fifth Third Bank branch in Henderson that would be the target. According to LeRose, he, McGuire, and Appellant drove to Wal-Mart in Henderson to purchase disguises. LeRose waited in the vehicle while McGuire and Appellant went inside. A still photo from a

Wal–Mart video surveillance camera showed McGuire and Appellant together in the store's Halloween section.

The next morning, according to LeRose, the group cleaned out the motel room to eliminate physical evidence, and then drove across the Ohio River into Evansville, Indiana. Along the way, the group threw over the bridge two bags of garbage (including garbage from the motel), which the Henderson Police Department later recovered. The group proceeded into Evansville, and dropped off Cynthia Swan at a Burger King restaurant. According to LeRose, the plan was for Cynthia to call the police and report the SUV stolen if the men did not return within an hour.

The three men drove back to Henderson, with Appellant driving. They pulled into an apartment complex to write robbery notes. Next, Appellant drove to a gas station, where he was to wait as LeRose and McGuire robbed the bank. At that point, LeRose backed out, and remained with Appellant, leading McGuire to rob the bank alone.

McGuire walked into the bank, wearing sunglasses, a blonde wig, and a baseball cap. He passed Terra Hurtle, the bank teller, a note demanding her $100 and $20 bills, with no dye packs. Hurtle began handing McGuire cash from her drawer. McGuire noticed a bank manager using the telephone, and told Hurtle to hurry because he had a gun, while motioning to the front of his pants. As McGuire left, and the manager stepped out of his office, McGuire told the manager to get back in his office, because he (McGuire) had a gun. After the robbery, police discovered a pistol-type BB gun in Appellant's SUV, near a document bearing McGuire's name.

After McGuire had completed the robbery, he returned to the gas station, and the men drove toward Evansville, Indiana, throwing their disguises over the Ohio River bridge along the way. McGuire gave LeRose and Appellant $1,000 each. The men then proceeded to the Burger King in Evansville to pick up Cynthia. Appellant gave his $1,000 to Cynthia, which police would later find in her purse. Upon pulling out of the Burger King parking lot, the Evansville Police Department, which had been informed of the robbery, stopped Appellant's SUV. McGuire fled, but was eventually apprehended. Police arrested all four occupants of the vehicle.

Appellant was indicted for first-degree robbery, as a principal and under a theory of complicity, and for PFO I. Cynthia Swan was also indicted and tried jointly with her husband, but the jury

ultimately acquitted her of all charges. LeRose, who had accepted a plea agreement, testified for the Commonwealth.

Appellant also testified, claiming that he was an unwilling participant in the robbery. According to Appellant, McGuire threatened him with the BB gun (which Appellant believed to be a real gun at the time) and forced him to participate in the robbery by driving to and from the bank. Appellant explained that McGuire stole the wig used in the robbery without his (Appellant's) knowledge. Appellant also stated that he tried to get away from McGuire when McGuire left the vehicle to rob the bank, but that McGuire was able to catch up with the SUV. Appellant explained that his wife was dropped off in Evansville after he begged McGuire to leave her out of the robbery.

After the presentation of all evidence, the trial court determined that there was insufficient evidence to instruct the jury on first-degree robbery with Appellant as the principal actor. The jury was instructed on first-degree robbery only under a theory of complicity. Instruction No. 2, as prepared by the trial court and submitted to the jury, read:

You will find the Defendant, Garry R. Swan, guilty of Complicity to First Degree Robbery under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about September 21, 2009, Mickie McGuire stole U.S. Currency from Fifth Third Bank;

B. That in the course of doing so and with intent to accomplish the theft, Mickie McGuire used or threatened the immediate use of physical force upon Terra Hurtle or another bank employee;

C. That he used or threatened the immediate use of a dangerous instrument, as defined in Instruction No. 4, upon any person who was not a participant in the crime.

AND

D. That the Defendant, Garry Swan, with the intention of promoting or facilitating the commission of the theft, solicited or engaged in a conspiracy with Mickie McGuire to commit the offense and/or aided or attempted to aid Mickie McGuire in planning or committing the offense.

> Appellant also tendered jury instructions, which included a definition of complicity as it is defined in KRS 502.020(1) and in Cooper and Cetrulo, Kentucky Instructions to Juries, Criminal § 10.01. The trial court ruled that the definition of complicity was implicit in its instruction, and therefore Appellant's definition was not needed. In the course of its deliberations, the jury sent a note to the court, asking for the "legal definition of complicity [and] facilitation." The court informed the jury that it could not provide any definition beyond what was contained in the instructions.
>
> Shortly thereafter, the jury returned a verdict finding Appellant guilty of complicity to first-degree robbery, followed by a penalty phase in which the jury found Appellant guilty of PFO I. This appeal followed.

Swan v. Commonwealth, 2011 WL 2438379, No. 2010–SC-000424-MR, at 1-3 (Ky. June 16, 2011). That decision reversed Swan's conviction, finding that jury instruction B. was erroneous, and the error was not harmless. Id.

On remand, Swan pleaded guilty to a single count of Complicity to Robbery in the First Degree on January 12, 2012. Swan v. Commonwealth, 2017 WL 128604, NO. 2014-CA-001760-MR, at *1 (Ky. Ct. App. January 13, 2017) (Swan II). Swan was sentenced to 13.5 years in prison. Id. Following his guilty plea, Swan filed an RCr. 11.42 motion arguing ineffective assistance of counsel. Id. The trial court denied this motion. Id. Swan appealed to the Kentucky Court of Appeals, who denied the appeal on January 13, 2017. Id. The Kentucky Supreme Court denied discretionary review on April 19, 2017 (DN 1 at PageID # 2).

Petitioner's Claim for Relief

In his petition, Swan raises only one argument: that he entered into a plea agreement constituting double jeopardy and is therefore void (DN 1 at PageID # 10-13). Swan argues that, when the trial court issued a directed verdict in his favor on the charge of Robbery I and II, then provided an erroneous jury instruction on the issue of complicity, jeopardy attached. Thus, on remand, Swan's counsel was ineffective for advising him to accept the plea deal.

4

Standard of Review

In relevant part, 28 U.S.C. § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrase "contrary to" means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (citing Webster's Third New International Dictionary 495 (1976)). Thus, under the "contrary to" clause of § 2254(d)(1), the Court may grant the writ if (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; **or** (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-413.

Under the "unreasonable application" clause of § 2254(d)(1), the Court may grant the writ if the state court identifies the correct governing legal rule from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Id. at 407-408, 413. When the Court makes the "unreasonable application" inquiry it "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. Thus, the state court's application of clearly established federal law must be more than

simply erroneous or incorrect, it must be objectively unreasonable. Id. at 409-411; Macias v. Makowski, 291 F.3d 447, 451 (6th Cir. 2002).

Discussion

In light of the standard set forth above, the issue in this case is whether the Kentucky Court of Appeals' conclusion that Swan's counsel was not ineffective for his failure to advise Swan that the plea agreement constituted double jeopardy was contrary to or an unreasonable application of clearly established Supreme Court precedent. This is essentially an issue within an issue. After all, if the plea agreement did not constitute double jeopardy, then Swan's counsel could not have been ineffective for failing to advise that it was.

The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. This guarantee applies to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794 (1969). The Supreme Court has expressly held, however, that the reversal of a conviction due to errors in the proceedings leading to the conviction does not implicate double jeopardy. "The principle that this provision does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence." United States v. Tateo, 377 U.S. 463, 465 (1964). One example of such a procedural error includes erroneous instructions to the jury resulting in reversal. Id. (citing Forman v. United States, 361 U.S. 416 (1960) (overruled on other grounds by Burks v. United States, 437 U.S. 1 (1978)).

Here, the Kentucky Supreme Court held that a jury instruction erroneously allowed the jury to find Swan guilty for being complicit to a simple theft, rather than containing a separate instruction that the jury believe Swan intended the principal to use or threaten the use of physical

6

force against the victim, as required by Kentucky's robbery statute. Swan, 2011 WL 2438379, at *3. Finding that the error was not harmless, the Court reversed. Id. at *4. On remand, Swan pleaded guilty before going to trial. Had he gone to trial, and had the Commonwealth attempted to introduce new evidence in furtherance of its case, then double jeopardy would be implicated. But nothing in the record indicates that the prosecution intended to pursue such a course of action. Therefore, under the clearly established Supreme Court precedent, there was no double jeopardy issue present in Swan's case.

On collateral appeal, the Kentucky Court of Appeals wrote "[t]herefore, there being no double jeopardy violation, Swan's counsel's advice on retrial to plead guilty to Complicity to Robbery I in exchange for dismissal of the PFO I charge (for which there was more than ample proof, and which Swan has never contended otherwise) was not ineffective in that regard." Swan II, 2017 WL 128604, at *2. The undersigned agrees. Swan's counsel cannot have been ineffective for failing to spot an issue that wasn't there. As a result, the undersigned recommends Swan's petition be denied.

The only remaining issue is whether a Certificate of Appealability should issue as to Swan's claim. When the Court rejects a claim on the merits, a Petitioner must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, the Supreme Court's precedent is abundantly clear, and no reasonable jurist would debate that, under current law, the conclusion that Swan was twice put in jeopardy is debatable or wrong. Therefore, the undersigned recommends a Certificate of Appealability not issue as to this claim.

## Recommendation

It is recommended that the instant petition (DN 1) be dismissed with prejudice and that a Certificate of Appealability not issue as to the claim asserted therein.

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

June 20, 2018

## Notice

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

June 20, 2018

Copies: Counsel